1 | NICHOLAS A. BROWN (SBN 198210)
  | brownn@gtlaw.com
2 | **GREENBERG TRAURIG, LLP**
3 | 4 Embarcadero Center, Suite 3000
  | San Francisco, CA 94111-5983
4 | Telephone: 415.655.1271
  | Facsimile: 415.520.5609

Attorneys for Plaintiff Prolifiq Software Inc.



ORIGINAL FILED
2013 AUG -6  P 2: 17
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

LB

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROLIFIQ SOFTWARE INC., an Oregon corporation, | Case No.: CV 13-3644 |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| VEEVA SYSTEMS INC., a Delaware corporation, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT

Plaintiff Prolifiq Software Inc. ("Prolifiq") brings this Complaint for patent infringement against Defendant Veeva Systems Inc. ("Veeva") and alleges as follows:

### NATURE OF THE ACTION

1. This is an action for patent infringement arising under the patent laws of the United States, including 35 U.S.C. §§ 271 and 281-285.

2. This lawsuit pertains to the Defendant's infringement of U.S. Patent Number 7,634,556 (the "'556 Patent"), entitled "ELECTRONIC MESSAGE MANAGEMENT."

### PARTIES

3. Plaintiff Prolifiq is a corporation organized and existing under the laws of the state of Oregon, with a principal place of business located at 4145 SW Watson, Avenue Suite 450, Beaverton, Oregon 97005.

4. Upon information and belief, Defendant Veeva is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business at 4637 Chabot Drive, Suite 210, Pleasanton, California 94588.

5. Upon information and belief, Veeva is a business involved in, among other things, the provision of software products to the life sciences industry, including customer relationship management software and content management software.

### JURISDICTION AND VENUE

6. This action arises under the Patent Laws of the United States, 35 U.S.C. § 101 *et seq.*, including 35 U.S.C. § 271. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has general personal jurisdiction over Veeva because Veeva has continuous and systematic contacts with this judicial district and maintains its principal place of business in this judicial district at 4637 Chabot Drive, Suite 210, Pleasanton, California 94588. Veeva, by conducting business within California, has purposefully availed itself of the benefits and protections of California's laws such that it should reasonably anticipate being haled into court here.

2
COMPLAINT FOR PATENT INFRINGEMENT

8. Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§ 1391 and §1400(b). Defendant Veeva resides in this district.

**INTRADISTRICT ASSIGNMENT**

9. Pursuant to Local Rule 3.2(c), assignment to any Division of this Court is proper because this is an Intellectual Property Action.

**FACTUAL BACKGROUND**

10. Plaintiff Prolifiq creates and sells a platform and suite of innovative software products that facilitate communication of information in controlled environments, such as those that are heavily regulated. Prolifiq's technology allows its customers to leverage mobile devices, the "cloud," and their existing information systems, in order to provide a seamless user experience for creating, maintaining, delivering, and tracking controlled content. Prolifiq's customers include Fortune 500 companies that market products in regulated environments.

11. Prolifiq is the owner of all rights, title and interest in patents and pending patent applications, including the '556 Patent, that describe the technology it has developed.

12. The '556 Patent was duly and legally issued on December 15, 2009 after being examined by the United States Patent Office. A Certificate of Correction to the '556 Patent was issued on November 9, 2010. All maintenance fees have been paid. A true and correct copy of the '556 Patent and Certificate of Correction is attached as Exhibit A.

13. The '556 Patent is embodied in Prolifiq's Rep Trigger product, which is also branded by Prolifiq as "SEND." Prolifiq's software license agreement for Rep Trigger states expressly that it is covered by the '556 Patent.

14. Prolifiq's Rep Trigger product enables the customized creation and delivery by email of controlled content. To accomplish this, Rep Trigger provides a sender with information regarding approved content items, and allows the sender to select specific items to be communicated to a recipient. Based on the sender's selections, Rep Trigger generates an email message including the approved content, or a link to the approved content, and then sends the message to the recipient. Rep Trigger uses centralized processing to ensure that only approved content, and not incorrect or

outdated content, is viewed by the message recipient. Rep Trigger thereby facilitates tracking of email communications for regulatory compliance and sales purposes.

15. Rep Trigger is particularly useful in the life sciences industry where, until recently, the communication of information about the uses of pharmaceutical products and health care treatments was limited to in-person contacts due to regulatory requirements. Rep Trigger allows life sciences industry sales representatives to communicate directly with health care providers via email while maintaining regulatory compliance regarding the content and auditing of such communications. Rep Trigger communications can include product information, efficacy studies, and other materials that until recently were either supplied in hard copy or could only be shown to the health care providers while the representative was present. Rep Trigger allows sales representatives to be more productive by providing more – and more accurate – information to a larger number of health care providers while maintaining regulatory compliance and minimizing the risk of off-label promotion.

16. Rep Trigger also provides adaptive media functionality and the tracking of recipient engagement data. Adaptive media functionality includes testing the capabilities of recipient devices and changing media content to display the most appropriate version of the content for the recipient's device. Rep Trigger tracks recipient engagement data by recording click-through rates and other statistical information. These functionalities enhance the ability of companies using Rep Trigger to provide the most suitable and effective content to targeted customers while also gaining information about the effectiveness of their messaging.

17. Rep Trigger can be deployed independently or integrated with other systems, such as customer relationship management ("CRM") systems, that are used by its customers. Integration allows data to be communicated between Prolifiq's modules and the customers' other systems. For example, integration of Rep Trigger with a CRM system allows data from Rep Trigger to be written into CRM databases.

18. Rep Trigger has been commercially successful, and has been purchased and deployed by many companies, including Fortune 500 companies in the technology, financial services, and life science industries.

19. Prolifiq has received awards and other recognition for its innovative technology and the Rep Trigger product in particular. Prolifiq was named #10 on Forbes Magazine's list of America's Most Promising Companies in 2009. Prolifiq won the People's Choice Award at the 2009 Venture Northwest event. Gartner Inc. named Prolifiq as one of its 2010 "Cool Vendors," explaining that this designation "highlights emerging innovators whose accomplishments, to date, may portend notable trends unfolding in the marketplace." Also in 2010, the U.S. Department of Health and Human Services mandated use of Prolifiq's products to assure regulatory compliance by a specific company.

20. In 2011, Bristol-Myers Squibb, one of Prolifiq's Rep Trigger customers, requested that Prolifiq work with Veeva to explore integration of Rep Trigger with Veeva's CRM system. Bristol-Myers Squibb's goal was that Veeva's CRM system would have Prolifiq's Rep Trigger functionality as an integrated link in Veeva's iRep product, and Rep Trigger would write parts of its data into the Veeva CRM system.

21. Accordingly, during October and November of 2011, representatives of Prolifiq and Veeva met in-person to discuss how to work together to integrate Rep Trigger with the Veeva CRM system deployed at Bristol-Myers Squibb.

22. The first meeting took place on or around October 18, 2011 at the Digital Pharma East conference in Philadelphia. The Veeva representatives at the meeting included Matt Wallach and Paul Shawah.

23. During the October 18 meeting, Prolifiq and Veeva entered into an oral nondisclosure agreement to ensure the protection of each company's confidential information. Veeva and Prolifiq also agreed to formalize that nondisclosure agreement in writing, resulting in a written Mutual Nondisclosure Agreement ("MNDA") dated November 10, 2011.

24. Veeva and Prolifiq met again in person and via conference call during the week of November 14, 2011. Veeva participants included Paul Shawah and Colin McRavey, among others.

25. During these meetings in October and November of 2011, Prolifiq's founder and Chief Technology Officer demonstrated Rep Trigger and explained in detail how it worked.

Prolifiq's Chief Technology Officer also described how Rep Trigger could be integrated with Veeva's CRM system.

26. Also during these meetings, including at least the October 18 meeting, Prolifiq informed Veeva that it owned patents covering its technology, including Rep Trigger.

27. At the time of these meetings, Veeva did not have any products with functionality comparable to Rep Trigger. In particular, Veeva did not have any product that enabled regulatory-compliant email communication between sales reps and healthcare practitioners by using centralized processing to ensure that only approved content, and not incorrect or outdated content, is viewed by the message recipient.

28. Beginning in November 2011, Prolifiq worked extensively with Veeva on the integration project. Representatives of Prolifiq, Veeva, and Bristol-Myers Squibb met regularly via phone calls and face-to-face to discuss the project.

29. As part of the integration project, which was intended to be a cooperative endeavor for the benefit of their mutual customer, Prolifiq disclosed confidential information about its technology, including Rep Trigger, to Veeva. Among other things, Prolifiq gave Veeva direct access to Prolifiq's Rep Trigger platform.

30. In May 2012, during meetings for the integration project that included Prolifiq, Veeva began to suggest to Bristol-Myers Squibb that it was developing a system that would work in conjunction with Veeva's "iRep" and Veeva's "Vault Platform" and provide the same functionality as Prolifiq's Rep Trigger product. During these meetings, Veeva repeatedly suggested to Bristol-Myers Squibb that instead of continuing with integration of Prolifiq's Rep Trigger product, it should wait for Veeva to complete its development of this product (which Veeva has now branded as "Approved Email").

31. The meetings for the integration project—and Veeva's suggestions that integration should be discontinued in favor of its upcoming Approved Email product—continued into August, 2012.

32. As a result of Veeva's suggestions that Bristol-Myers Squibb adopt its forthcoming Approved Email product, Bristol-Myers Squibb instructed Prolifiq on August 21, 2012, to cease work on integrating Prolifiq's Rep Trigger product and Veeva's CRM system.

33. On February 14, 2013, Veeva issued a press release announcing Approved Email. In the press release, Veeva described its "Approved Email solution" as enabling "regulatory-compliant email communication between sales reps and healthcare practitioners." In addition, Veeva's Paul Shawah stated that the "persistent problem" addressed by Approved Email was "a surprisingly complex problem to solve. Many different elements need to come together, including the right hardware, mobile connectivity and the right software solutions."

34. The functionality of Veeva's Approved Email product duplicates the functionality of Prolifiq's Rep Trigger product.

35. Veeva developed its Approved Email product by copying Prolifiq's Rep Trigger product.

36. Veeva's Approved Email product infringes Prolifiq's '556 Patent, as alleged below.

37. Veeva has harmed Prolifiq through its infringement of Prolifiq's '556 Patent, including for example by telling Prolifiq's customers and potential customers that it was planning to release a software program that would duplicate the functionality of Rep Trigger.

38. Bristol-Myers Squibb ended the integration project between Prolifiq's Rep Trigger and Veeva's CRM system, as described above. In addition, Bristol-Myers Squibb has delayed implementation of Prolifiq's Rep Trigger product in Canada, despite having an existing contract with Prolifiq for its Canadian operations. Bristol-Myers Squibb told Prolifiq that it was considering using Veeva's infringing Approved Email product for implementation in Canada instead.

## COUNT I – INFRINGEMENT
## OF UNITED STATES PATENT NO. 7,634,556 AGAINST DEFENDANT VEEVA

39. Prolifiq restates and realleges each of the assertions set forth in Paragraphs 1 through 38 above.

40. Veeva's manufacture, use, offer for sale, and sale of its Approved Email product infringes the '556 Patent, directly and/or indirectly, under 35 U.S.C. § 271.

41. Veeva knows that its customers' use of its Approved Email product infringes the '556 Patent and specifically intends that its customers use its Approved Email product to infringe the '556 Patent. As stated above, Veeva was aware of and on notice of the '556 Patent no later than October 18, 2011. Veeva has also been aware since that time that Prolifiq's Rep Trigger product was covered by the '556 Patent. Veeva nonetheless intentionally developed Approved Email to duplicate the functionality of Rep Trigger. Moreover, Veeva developed Approved Email while it had access to confidential information about the operation of Rep Trigger, and about how Rep Trigger could be integrated with its existing CRM system.

42. On information and belief, Veeva's infringement of the '556 Patent has been intentional, willful and without regard to Prolifiq's rights.

43. Prolifiq has been harmed as a direct and proximate result of Veeva's infringement of the '556 Patent. Veeva's infringement has harmed Prolifiq's existing customer relationships, and has harmed Prolifiq's ability to obtain new customers and form new customer relationships.

44. Prolifiq is entitled to recover from Veeva the damages sustained by Prolifiq as a result of Veeva's infringement, including its lost profits, in an amount subject to proof at trial and not less than a reasonable royalty, together with prejudgment interest, enhanced damages, attorneys' fees, and costs as fixed by this Court under 35 U.S.C. §§ 284 and 285.

45. The infringement by Veeva of the '556 Patent will continue to cause Prolifiq irreparable injury and damage for which there is no adequate remedy at law unless and until Veeva is enjoined from infringing said patent.

## PRAYER FOR RELIEF

WHEREFORE, Prolifiq respectfully requests that the Court enter judgment in its favor against Veeva, granting the following relief:

a. A judgment that Veeva has willfully infringed, contributorily infringed, and/or induced infringement the '556 Patent literally and/or under the doctrine of equivalents;

b. An order and judgment pursuant to 35 U.S.C. § 283, permanently enjoining Veeva and its agents, servants, officers, directors, employees, affiliated entities, and all persons in active concert or participation with it from further acts of infringement of the '556 Patent;

c. A judgment awarding to Prolifiq all damages adequate to compensate Prolifiq for Veeva's acts of infringement of the '556 Patent and in no event less than a reasonable royalty for the Veeva's acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

d. A judgment awarding Prolifiq all damages, including treble damages, based on any infringement found to be willful, pursuant to 35 U.S.C. § 284, together with prejudgment interest;

e. Actual damages suffered by Prolifiq as a result of Veeva's unlawful conduct, in an amount to be proven at trial, as well as prejudgment interest as authorized by law;

f. A judgment that this is an exceptional case and an award to Prolifiq of its costs and reasonable attorneys' fees incurred in this action as provided by 35 U.S.C. § 285; and

g. A post-verdict and post-judgment accounting for any infringement the '556 Patent not otherwise covered by a damages award and the requested injunctive relief; and

h. Such other and further relief as the Court may deem just and proper under the circumstances.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Prolifiq respectfully requests a trial by jury of any and all issues on which a trial by jury is available under applicable law.

Dated: August 6, 2013                                   **GREENBERG TRAURIG, LLP**

                                                        By: /s/ Nicholas A. Brown
                                                            Nicholas A. Brown

                                                        OF COUNSEL:

9
COMPLAINT FOR PATENT INFRINGEMENT

David W. Axelrod
    daxelrod@schwabe.com
Devon Zastrow Newman
    dnewman@schwabe.com
**Schwabe, Williamson & Wyatt, P.C.**
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

Attorneys for Plaintiff Prolifiq Software Inc.