# EXHIBIT B
# (PUBLIC VERSION)

**KEKER & VAN NEST** LLP

633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
kvn.com

**Khari J. Tillery**
(415) 773-6621
ktillery@kvn.com

May 1, 2014

**VIA EMAIL**

Nicholas A. Brown
Greenberg Traurig
Four Embarcadero Center
Suite 3000
San Francisco, CA 94111-5983

Re:   Prolifiq Software Inc. v. Veeva Systems Inc. and cross-action
      Case No.: 13-cv-3644 SI

Dear Nick:

I am writing in regard to the deficiencies in Prolifiq's Trade Secret Disclosure, which was served on the evening of April 24.

California Civil Code § 3426.1(d) defines a "trade secret" as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Simply put, "[t]he *sine qua non* of a trade secret ... is the plaintiff's possession of information of a type that can, at the possessor's option, be made known to others, or withheld from them, *i.e.*, kept secret." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220 (2010), *disapproved on other grounds in Kwikset Corp. v. Super. Ct*, 51 Cal. 4th 310 (2011). But once the information is disclosed to the public or any person who is not obligated to keep it confidential, the trade secret is destroyed. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished."); *accord In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304 (2002).

Given the essential nature of a trade secret, there are several categories of information that, by their very nature, do not qualify as trade secrets:

- "[G]eneral knowledge in the trade or [...] special knowledge of those persons who are skilled in the trade are not trade secrets." *Agency Solutions.Com, LLC v.*

817366

Nicholas A. Brown
May 1, 2014
Page 2

>   *TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011) (citing *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)) (internal quotations omitted; ellipsis in original).

- "Ideas or concepts are not, in and of themselves, trade secrets." *Id.* (citing *Silvaco*, 184 Cal. App. 4th at 221-22.

- "Proprietary ways of doing the same thing that others in the same field do are not trade secrets." *Id.* (citing *Silvaco,* 184 Cal. App. 4th at 221-22).

- "Plans, flows, inputs, outputs, rules of operation, priorities of operation, and the like are not trade secrets to the extent they are manifest in the way a program works." *Id.* (citing *Silvaco*, 184 Cal. App. 4th at 221-22).

It is therefore critical to any trade secret cause of action (and the defense thereof) "that the information claimed to have been misappropriated be clearly identified." *Silvaco*, 184 Cal. App. 4th at 221. Accordingly, a California trade secret plaintiff must, prior to commencing discovery, identify its alleged trade secrets with "reasonable particularity." Cal. Civ. Proc. Code § 2019.210. More specifically, "the plaintiff is burdened to make two showings. First, the plaintiff must clearly identify what the 'thing' is that is alleged to be a trade secret, and second, the plaintiff must be able to clearly articulate why that 'thing' belongs in the legal category of trade secret." *Agency Solutions.Com*, 819 F. Supp. 2d at 1015. Thus, in evaluating the sufficiency of a plaintiff's trade secret disclosure, the question before the court is whether "the stated details themselves are sufficient, given the nature of the alleged secret and the technology in which it arises, to permit the defendant to ascertain whether and in what way the information is distinguished from matters already known, and to permit the court to fashion appropriate discovery." *Brescia v. Angelin*, 172 Cal. App. 4th 133, 143 (2009).

Simply put, Prolifiq has an affirmative obligation to identify with particularity what information it considers trade secret and how and why that information qualifies as such. This particularized identification is necessary, and required by law, so that Veeva can prepare its defenses and the Court can evaluate Prolifiq's trade secret allegations and place appropriate limits on the scope of discovery. *See, e.g., Brescia*, 172 Cal. App. 4th at 147.

Prolifiq's trade secret list comes nowhere close to complying with the basic requirements of Section 2019.210. This letter will address each of Prolifiq's purported trade secrets in turn.

**I.      The design of Rep Trigger and its integration with BMS's existing systems**

Prolifiq alleges that "[m]any aspects of the design/architecture of Prolifiq's Rep-Trigger product, and Prolifiq's designs/architecture for integrating its Rep-Trigger product with ▇▇▇▇ systems, are trade secrets." Disclosure at p. 1:18-20. Prolifiq's Trade Secret Disclosure, however, is insufficient to allow Veeva "to ascertain whether and in what way the information is distinguished from matters already known." *Brescia*, 172 Cal. App. 4th at

817366

143. In other words, Prolifiq fails to "articulate why [this information] belongs in the legal category of trade secret." *See Agency Solutions.Com*, 819 F. Supp. 2d at 1015.

***First***, software design and architecture do not qualify for trade secret protection to the extent they are *evident in the way the software works*. In *Silvaco*, for example, the plaintiff claimed as a trade secret "various features, functions, and characteristics of the design and operation of [its] software products." *Silvaco*, 184 Cal. App. 4th at 221 (explaining, for example, that the mere "integration" of two operations was a feature and could not be trade secret). While the *Silvaco* disclosure consisted of "22 pages of technical verbiage," the Court of Appeal found that the plaintiff was attempting to "characterize various aspects of the *underlying design* [of its software] as trade secrets." *Id.* (emphasis in original). The court held that the underlying software design was not subject to trade secret protection because it was, by its very nature, disclosed to any purchaser and/or user of the software. Accordingly, the *Silvaco* court held that, "while the finished (compiled) product might have distinctive characteristics resulting from that design—such as improved performance—they cannot constitute trade secrets because they are not secret, but are evident to anyone running the finished program. Indeed, to the extent they tend to disclose the underlying design, it ceases to be a protectable secret for that same reason." *Id.* at 222. Similarly, in *Agency Solutions.Com*, Chief Judge Ishii of the Eastern District, relying on *Silvaco*, held that "[p]lans, flows, inputs, outputs, rules of operation, priorities of operation, and the like are not trade secrets to the extent they are manifest in the way a program works." *Agency Solutions.Com.*, 819 F. Supp. 2d at 1017. Many of Prolifiq's alleged trade secrets appear to fall into this category. *See infra.* More importantly, in its trade secret disclosure, Prolifiq makes no effort to distinguish between Rep Trigger's design features that are "manifest in the way a program works" and those that are not, if any.

***Second***, Prolifiq claims that the "identity" and "format" of BMS systems and electronic information used in conjunction with Rep Trigger are somehow a Prolifiq trade secret. *See* Prolifiq's Trade Secret Disclosure ("Disclosure") at 1:21-5:13. For example, Prolifiq claims that ▮▮▮▮▮ is a Prolifiq trade secret. *See id.* at p. 1:21-27 (emphasis added); *see also id.* at p. 2:1-7 (emphasis added). Similarly, Prolifiq seeks trade secret protection over the ▮▮▮▮▮ *See id.* at p. 2:7-3:7. These do not appear to be Prolifiq trade secrets. Indeed, many of the documents relied on by Prolifiq as evidence of these and other purported trade secrets were prepared ▮▮▮▮▮ *See, e.g.*, PV_00015866 (cited 44 times), PV_0015856 (cited 30 times), and PV_00015997 (cited 13 times).

And these are not isolated examples. Prolifiq's Trade Secret Disclosure is riddled with assertions that the "identity" and "format" of ▮▮▮▮▮ constitute Prolifiq trade secrets. *See, e.g.*, Disclosure at p. 3:8–4:10 ▮▮▮▮▮; p. 4:11-22 ▮▮▮▮▮

817366

████████ p. 4:23-5:13 ████████████████████
████████; and p. 6:17-19 ████████████████████
████████. In short, Prolifiq concedes that its claimed trade secret information was actually known to (and many of the underlying documents prepared ████████. Such information is not, on its face, a trade secret, and Prolifiq fails to "articulate why [it] belongs in the legal category of trade secret." *Agency Solutions.Com*, 819 F. Supp. 2d at 1015; *see also* Cal. Civ. Code § 3426.1(d).

***Third***, Prolifiq claims that its "reliance" on and/or "use" of ████████████ is also a Prolifiq trade secret. *See, e.g.*, Disclosure at p. 5:14-6:16 and 7:20-8:18. One of Prolifiq's asserted trade secrets, for example, ████████████████████████████████████████████████████████████████████████████████████████████████ Disclosure at p. 5:14-18. However, the referenced ████████████████████████ is information that Prolifiq admittedly received ████████████████████████ *See* Disclosure at p. 2:10-16 (citing PV_00015866, PV_0015856, and PV_00015997). In addition to being ████████████████, this information does not appear to be a trade secret for two additional reasons—that is, on its face, it appears to be, at best, a "[p]roprietary way[] of doing the same thing that others in the same field do" and/or (2) "[p]lans, flows, inputs, outputs, rules of operation, priorities of operation" manifest in the way a Rep Trigger works. *Agency Solutions.Com*, 819 F. Supp. 2d at 1017. Neither of these things is a trade secret. Prolifiq's Trade Secret Disclosure is therefore insufficient because it fails to articulate "why [the identified information] belongs in the legal category of trade secret." *Agency Solutions.Com*, 819 F. Supp. 2d at 1015.

***Finally***, as described above, Prolifiq uses technical jargon and documentation to give the illusion of specificity, where none actually exists. The California Court of Appeal has made clear, however, that a trade secret plaintiff is not "entitled to hide its trade secrets in 'plain sight' by including surplusage and voluminous attachments in its trade secret statement." *See Perlan Therapeutics, Inc. v. Super. Ct.*, 178 Cal. App. 4th 1333, 1350 (2009). Similarly, in *Silvaco*, the California Court of Appeal rejected claimed trade secrets, even though the disclosure included "22 pages of technical verbiage," because the disclosure did not identify any information that qualified as a trade secret. The same is true here. Simply put, Prolifiq has failed to identify what, if any, of information it ████████████████ qualified as a trade secret. *See Ruckelshaus*, 467 U.S. at 1002 ("If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished.").

## II. Prolifiq's "Product Roadmap"

Prolifiq alleges that certain aspects of its so-called "Product Roadmap" are trade secret, including: ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Disclosure at p. 8:21-24. It is well-

established, however, that a single customer's preferences or requirements (as opposed to a compilation of such information for many customers) are not trade secrets because an individual customer "is presumably aware of its own needs." *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1456 (2002) (internal quotation marks omitted). In this case, the evidence produced by Prolifiq in support of its alleged trade secrets reveals that ███████████████████████████████████████████████████████████████. *See, e.g.*, PV_00015866, PV_0015856, and PV_00015997. More importantly, Prolifiq does not articulate with any particularity ███████ could not share this information with other potential vendors. *See also Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 863 (1994) ("information imparted to [a vendor] by [a customer] is equally available to anyone contracting with [that customer]" and is thus not a trade secret).

Moreover, even assuming that Prolifiq's "Product Roadmap" included information that, at one point, was only known to Prolifiq (which is unclear from the Disclosure), Prolifiq does not explain how this information remained a trade secret after ███████████████—other than a vague assertion that it "only disclosed its trade secrets to third parties, such as ███████, when operating under a nondisclosure agreement." *See* Disclosure at 10:20-22. Prolifiq does not allege, much less with particularity, that its purported "Product Roadmap" was subject to any nondisclosure agreement ███████████████. *See Ruckelshaus*, 467 U.S. at 1002.

### III. Prolifiq's pricing for Rep Trigger and integration of Rep Trigger with BMS's existing systems

Prolifiq asserts that certain aspects of the pricing ███████████ for Rep Trigger are trade secrets, including: (███████████████████████████████████████████████████████████████████████████████████████ Disclosure at p. 9:7-16. Obviously, ███████████ paid for Rep Trigger is "known" ███████, and Prolifiq does not allege ███████████ (or any of its customers were) contractually or otherwise obligated to keep this information secret. *See Agency Solutions.Com*, 819 F. Supp. 2d at 1015 (explaining that, as part of its trade secret disclosure, "the plaintiff must be able to clearly articulate why that 'thing' belongs in the legal category of trade secret."); *see also Ruckelshaus*, 467 U.S. at 1002 ("If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished.").

For the reasons stated above, Prolifiq has failed to identify, with "reasonable particularity," any information that qualifies as trade secret under Civil Code § 3426.1(d). Please confirm that Prolifiq will amend its trade secret disclosure to address these deficiencies and comply with Section 2019.210 and that Prolifiq agrees that any discovery it seeks to take is stayed until such time (including Prolifiq's First Set of Requests for Admission, served on April 25). If Prolifiq is not willing to amend its trade secret disclosure and/or respect the mandatory discovery stay, please let us know promptly so that we may raise this issue with the Court and seek an appropriate protective order. I look forward to your response.

817366

Nicholas A. Brown
May 1, 2014
Page 6

Very truly yours,

Khari J. Tillery

KJT:at

817366